# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR GRAMAJO LOPEZ,<br><br>    Petitioner,<br><br>    v.<br><br>MERRICK GARLAND, et al.,<br><br>    Respondents. | Case No. 1:22-cv-0531-SAB-HC<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS, DENYING AS MOOT PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER, AND DENYING RESPONDENTS' MOTION TO DISMISS<br><br>(ECF Nos. 1, 2, 19) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States Magistrate Judge. (ECF Nos. 16–18.)

**I.**

**BACKGROUND**

Petitioner is a native and citizen of Guatemala who entered the United States in February 2000 when he was fifteen years old. Petitioner became a lawful permanent resident of the United States in 2008. (ECF No. 1 at 7.)[1] On February 10, 2010, Petitioner was convicted of three counts of second-degree robbery, and he was sentenced to a total imprisonment term of seventeen years. (ECF No. 19 at 3; ECF No. 19-1 at 2.) Upon Petitioner's release from prison,

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

1   U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner on September 10, 2021.
2   (ECF No. 1 at 2, 4, 7.) Removal proceedings were initiated, and Petitioner was charged with
3   being removable from the United States as an aggravated felon under 8 U.S.C.
4   §§ 1227(a)(2)(A)(iii) and 1101(a)(43)(G). (ECF No. 1-2.)

5         On September 17, 2021, ICE conducted a custody determination and concluded that
6   Petitioner should remain in custody because he was a threat to public safety. (ECF No. 19-1 at
7   35–36.) Petitioner requested a custody redetermination, and on April 14, 2022, an Immigration
8   Judge ("IJ") denied Petitioner's request for a change in custody status because Petitioner "is
9   detained in McFarland, California, which is not within the jurisdiction of the U.S. District Court
10  for the Central District of California. Accordingly, [Petitioner] is not eligible for a bond hearing
11  under Rodriguez." (ECF No. 19-1 at 38 (citing Jennings v. Rodriguez, 138 S. Ct. 830 (2018)).)
12  Petitioner has not been afforded any bond hearing before an IJ.

13        On April 29, 2022, Petitioner filed a petition for writ of habeas corpus and a motion for
14  temporary restraining order ("motion for TRO") in the United States District Court for the
15  Northern District of California. (ECF Nos. 1, 2.) Petitioner asserts that his prolonged detention
16  violates the Fifth and Eighth Amendments and requests a court order requiring Respondents to
17  immediately release Petitioner from detention or provide Petitioner with a bond hearing before
18  an immigration judge. On May 2, 2022, the parties stipulated to the transfer of the petition, and
19  the matter was transferred to the Eastern District of California. (ECF Nos. 9, 10.)

20        On May 23, 2022, Respondents filed an opposition to the motion for TRO and a motion
21  to dismiss, arguing that: (1) the motion for TRO should be denied because it essentially seeks
22  expedited consideration of Petitioner's habeas petition; and (2) the habeas petition should be
23  dismissed for failure to state a claim upon which relief can be granted because Petitioner is
24  subject to mandatory detention and his continued detention without a bond hearing is
25  constitutional. (ECF No. 19.) On May 30, 2022, Petitioner filed a reply in support of the motion
26  for TRO and an opposition to the motion to dismiss. (ECF No. 21.) On June 8, 2022,
27  Respondents filed a reply in support of the motion to dismiss. (ECF No. 22.) Meanwhile, on May
28  19, 2022, Petitioner was ordered removed to Guatemala. (ECF No. 20-1.)

On August 4, 2022, the Court ordered the parties to submit supplemental briefs regarding which test to apply to determine whether due process requires a bond hearing in a particular case. (ECF No. 23.) The parties submitted their supplemental briefs on August 26, 2022. (ECF Nos. 24, 25.) On September 7, 2022, the Court held a hearing on the motion for TRO, the motion to dismiss, and the petition for writ of habeas corpus. (ECF No. 26.)

## II.

## DISCUSSION

### A. Overview of Caselaw Regarding Immigration Detention Statutes

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

The authority to detain certain noncitizens already in the country pending the outcome of removal proceedings is found in 8 U.S.C. §§ 1226(a) and 1226(c). Here, it is undisputed that Petitioner has been detained pursuant to § 1226(c), which provides:

(1) Custody

The Attorney General shall take into custody any alien who--

    (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

    (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

    (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[1] to a term of imprisonment of at least 1 year, or

    (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

///

> (2) Release
>
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c).

"[I]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have grappled in piece-meal fashion with whether the various detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'" Rodriguez v. Robbins (Rodriguez II), 715 F.3d 1127, 1134 (9th Cir. 2013) (quoting Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010)). In Zadvydas v. Davis, 533 U.S. 678 (2001), two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under 8 U.S.C. § 1231(a)(6), which governs detention beyond the ninety-day removal period. Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Id. at 689. Thus, "after a presumptively reasonable six-month period of post-removal period detention, the alien was entitled to release if he successfully demonstrated that there was 'good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.'" Prieto-Romero, 534 F.3d at 1062 (quoting Zadvydas, 533 U.S. at 701).

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). Demore distinguished Zadvydas by emphasizing detention under § 1226(c) has a "definite termination point" and "in the majority of the cases it

4

lasts for less than the 90 days we considered presumptively valid in Zadvydas." Id. at 529 (noting that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days" and "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter").[2] However, Justice Kennedy's concurring opinion, which created the majority rejecting the facial challenge to mandatory detention under 8 U.S.C. § 1226(c), specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

In the Rodriguez class action, noncitizens "challenge[d] their prolonged detention pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings and determinations to justify their continued detention." Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060, 1065 (9th Cir. 2015). In Rodriguez II, to avoid constitutional concerns, the Ninth Circuit held that mandatory detention under § 1226(c) and § 1225(b) is implicitly time-limited and expires after six months. Thereafter, the government's authority to detain shifts to § 1226(a), which requires a bond hearing governed by the procedural requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011).[3] Rodriguez II, 715 F.3d

---

[2] "Thirteen years after the decision in Demore, the government admitted that the figures it provided to the Court, and which the Court relied on, contained 'several significant errors.'" Rodriguez, 2019 WL 7491555, at *5 (citations omitted). Although the "Supreme Court had inferred from the government's brief in Demore that in cases in which the alien appeals, the time of detention was 'about five months,'" the government's 2016 letter clarified that for years 1999–2001, the "length of detention in cases where the alien appealed [was] 382 days, or a little more than a year." Id. (citations omitted).

> [I]n cases in which an appeal *was* filed, in most years the *average* length of detention was more than 300 days, or more than double the five-month estimate the Court relied on in Demore. The data from the Jennings case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual detention periods exceeding four years. Indeed, when the GAO conducted a study, it found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days.

Rodriguez, 2019 WL 7491555, at *5 (citations omitted).

[3] In Singh, the Ninth Circuit provided guidance as to the procedural requirements for the bond hearings. Specifically, "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." Singh, 638 F.3d at 1208. Due process also requires a contemporaneous record of the bond hearings, such as a transcript or audio recording. Id.

1  at 1138–44. In Rodriguez III, the Ninth Circuit held that for noncitizens detained under 8 U.S.C.
2  §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every
3  six months so that noncitizens may challenge their continued detention as 'the period of . . .
4  confinement grows.'" Rodriguez III, 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II),
5  634 F.3d 1081, 1091 (9th Cir. 2011)).

6       In Jennings v. Rodriguez, 138 S. Ct. 830 (2018), the Supreme Court rejected the Ninth
7  Circuit's interpretation that § 1226(c) included "an implicit 6–month time limit on the length of
8  mandatory detention" and reversed Rodriguez III, holding that the Ninth Circuit misapplied the
9  constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic
10 bond hearings every six months in which the Attorney General must prove by clear and
11 convincing evidence that the alien's continued detention is necessary." Jennings, 138 S. Ct. at
12 842, 846, 847–48. The Supreme Court remanded the case to the Ninth Circuit "to consider [the]
13 constitutional arguments on their merits." Id. at 851. The Ninth Circuit, in turn, remanded the
14 case to the district court to consider the constitutional arguments in the first instance, but noted
15 that it had "grave doubts that any statute that allows for arbitrary prolonged detention without
16 any process is constitutional or that those who founded our democracy precisely to protect
17 against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d
18 252, 255, 256 (9th Cir. 2018).

19      Since the Rodriguez remand, there has been "a dearth of guidance regarding the point at
20 which an individual's continued mandatory detention under Section 1226(c) becomes
21 unconstitutional." Gonzalez v. Bonnar, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D.
22 Cal. Jan. 25, 2019). See Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) ("Whether due
23 process requires a bond hearing for aliens detained under § 1226(c) is not before us today. And
24 we take no position on that question."); Hernandez Avilez v. Garland, No. 20-16142, --- F.4th
25 ----, 2022 WL 4101174, at *12 (9th Cir. Sept. 8, 2022) (declining to make a determination on
26 whether due process required a bond hearing for noncitizen detained under § 1226(c) and
27 remanding to district court for consideration of due process claim).[4] Although the Ninth Circuit

---

28 [4] After the supplemental briefs were submitted and the hearing was held in this matter, the Ninth Circuit issued its

has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c), it has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" Martinez, 36 F.4th at 1223 (citation omitted).

### B. Respondents' Motion to Dismiss

In the motion to dismiss, Respondents assert that the petition should be dismissed for failure to state a claim upon which relief may be granted because the Supreme Court in Demore upheld the constitutionality of mandatory detention pursuant to 8 U.S.C. § 1226(c) while removal proceedings are pending and Petitioner's detention falls within the scope of the detention the Supreme Court has upheld as constitutional. (ECF No. 19.)

As noted above, Demore rejected a *facial* challenge to mandatory detention under 8 U.S.C. § 1226(c). Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c), Martinez, 36 F.4th at 1223, the First and Third Circuits have found that "the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention . . . under [section 1226(c)]." Reid v. Donelan, 17 F.4th 1, 7 (1st Cir. 2021) (alterations in original) (citation omitted). Accord German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 209–10 (3d Cir. 2020) (holding that after Demore and Jennings, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable). Additionally, "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings,

---

decision in Hernandez Avilez v. Garland, No. 20-16142, --- F.4th ----, 2022 WL 4101174, at *12 (9th Cir. Sept. 8, 2022). Hernandez Avilez held that Jennings abrogated a portion of the Ninth Circuit's precedent in Casas-Castrillon v. Department of Homeland Security, 535 F.3d 942 (9th Cir. 2008), "that a [8 U.S.C. § 1226(c)] detainee who pursues judicial review of an order of removal is detained first under [§ 1226(c)] and later under [§ 1226(a)]." Hernandez Avilez, 2022 WL 4101174, at *9. As the shift in detention authority is not an issue in this case, the Court finds that Hernandez Avilez does not directly impact the matter before this Court.

without a bond hearing, 'will—at some point—violate the right to due process.'" Martinez v. Clark, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019) (citation omitted), report and recommendation adopted, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019).

Based on the foregoing, the Court will follow this line of cases and find that unreasonably prolonged mandatory detention under 8 U.S.C. § 1226(c) without an individualized bond hearing violates due process. Accordingly, Respondents' motion to dismiss is denied. The Court now turns to whether Petitioner's detention has been unreasonably prolonged such that due process requires a bond hearing.[5]

**C. Due Process**

Courts in this circuit have taken various approaches to determining whether due process requires a bond hearing in a particular case. One court concluded that in the absence of controlling appellate authority, the analytical framework set forth in various pre-Jennings Ninth Circuit cases supports the "argument that detention becomes prolonged after six months and entitles [the petitioner] to a bond hearing." Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019). Other courts have eschewed this six-month bright-line rule and "have concluded that the decision depends on the individual circumstances of each case." Gonzalez, 2019 WL 330906, at *2.

Courts declining to adopt a bright-line rule have taken different approaches in analyzing whether the individual circumstances of a particular case require a bond hearing. Some courts rest their decision predominately on the length of detention and the reason for the delay. See Banda v. McAleenan, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019) (collecting cases); Martinez, 2019 WL 5968089, at *6 (collecting cases).

"Other courts engage in a case-specific analysis that involves consideration of several factors derived from Zadvydas, Demore, and the First, Third, Sixth, and Eleventh Circuits' pre-Jennings decisions regarding the reasonableness of prolonged detention under § 1226(c)[.]" Banda, 385 F. Supp. 3d at 1116. These factors are:

---

[5] The issue before this Court is whether Petitioner is entitled to an *initial* bond hearing. The Court expresses no view as to whether due process requires a second or subsequent bond hearing.

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

Banda, 385 F. Supp. 3d at 1117 (quoting Jamal A. v. Whitaker, 358 F. Supp. 3d 853, 859 (D. Minn. 2019)). The Western District of Washington has adopted an eight-factor test that considers "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in addition to the six factors set forth above. Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (alteration in original), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021).

There are also some courts that apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976):

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334. See Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *3–4 (D. Or. Mar. 25, 2020) (collecting cases), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020).

In deciding whether to apply the Mathews test or the multi-factor analysis, some district courts have found the determining factor to be whether the petitioner is requesting an initial bond hearing or an additional bond hearing. See Djelassi v. ICE Field Office Dir., No. C19-491-RSM, 2020 WL 263670, at *2 (W.D. Wash. Jan. 17, 2000) ("While the Mathews factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." (quoting Banda, 385 F. Supp. 3d at 1118)). But see Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5–6 (N.D. Cal. June 14, 2022) (applying Mathews

1 test to petitioner's due process claim requesting initial bond hearing); Vallejo v. Decker, No. 18-
2 CV-5649 (JMF), 2018 WL 3738947, at *4 (S.D.N.Y. Aug. 7, 2018) (applying multi-factor test to
3 petitioner's claim that government's refusal to hold a second bond hearing violated petitioner's
4 right to due process). Other courts have applied both tests in an abundance of caution given the
5 uncertainty regarding which test to apply. See Zagal-Alcaraz, 2020 WL 1862254, at *4; Mitka v.
6 ICE Field Office Dir., No. C19-193 MJP, 2019 WL 5892025, at *2 (W.D. Wash. Nov. 12, 2019).

7        Here, Petitioner "contends that between the Multi-Factor Test and the Matthew's [sic]
8 Test discussed by district courts in this circuit, the Multi-Factor Test is appropriate in the instant
9 case." (ECF No. 24 at 3.) On the other hand, Respondents argue that the Mathews test applies
10 and the eight "factors are useful only to the extent that they can justify a shift in the *Mathews*
11 analysis, and should be consider[ed] in terms of . . . whether they explain why detention that was
12 constitutional at its outset has become unconstitutional." (ECF No. 25 at 3.)

13        After reviewing the parties' supplemental briefs and having heard arguments on the issue,
14 the Court is not persuaded that either the Mathews or eight-factor test is appropriate to determine
15 whether due process requires a bond hearing in a particular case. As noted by other district
16 courts, "[w]hile the Mathews factors may be well-suited to determining whether due process
17 requires a second bond hearing, they are not particularly dispositive of whether prolonged
18 mandatory detention has become unreasonable in a particular case." Djelassi, 2020 WL 263670,
19 at *2.[6] With respect to the eight-factor test, the Court finds that the conditions of detention, the
20 likelihood that the removal proceedings will result in a final order of removal, whether the
21 detention will exceed the time the petitioner spent in prison for the crime that made him
22 removable, and the nature of the crimes the petitioner committed are not particularly suited to
23 assisting the Court in determining whether detention has become unreasonable and due process
24 requires a bond hearing. The Court presumes that the conditions under which immigration
25 detainees are held are constitutional and if there are allegations of unconstitutional conditions of

---

[6] Again, it must be noted that this Court is by no means providing any insight as to whether a failure to provide a "second bond hearing" violates due process. That analysis would be much different than the present analysis of whether due process is implicated in providing an initial bond hearing. This Court points this out again as a few courts conflate these two separate considerations in their analysis which then confuses the jurisprudence is this area.

confinement, the available avenues of redress do not require a petitioner to wait for detention to become unduly prolonged in order to challenge such conditions. The likelihood that the removal proceedings will result in a final order of removal, the length of time spent in prison for the crime that made the petitioner removable, and the nature of the crime committed are factors more suited for consideration at a bond hearing by the immigration judge (who is in a much better position to adjudicate factors regarding removal) than for consideration to determine whether detention has become unreasonable.

To determine whether § 1226(c) detention has become unreasonable, the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government.

1. Total Length of Detention to Date

Petitioner has been in immigration detention since September 10, 2021—approximately one year. District courts have found shorter lengths of detention pursuant to § 1226(c) without a bond hearing to be unreasonable. See, e.g., Perera v. Jennings, No. 21-cv-04136-BLF, 2021 WL 2400981 (N.D. Cal. June 11, 2021) (granting TRO and ordering individualized bond hearing for petitioner detained almost two months); Sajous v. Decker, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *1, 11 (S.D.N.Y. May 23, 2018) (granting preliminary injunction and ordering individualized bond hearing for petitioner detained more than eight months); Jarpa v. Mumford, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (granting habeas relief and ordering individualized bond hearing for petitioner detained nearly eleven months). But see De Oliveira Viegas v. Green, 370 F. Supp. 3d 443, 448–49 (D.N.J. 2019) ("As a general matter, courts in this District have found detention for a year, or just over a year, insufficient to support an as-applied challenge to a § 1226(c) detention post-Jennings.").

Respondents cite to Dos Santos v. Moniz, No. 21-10611-PBS, 2021 WL 3361882 (D. Mass. May 18, 2021), and Alphonse v. Moniz, No. 21-11844-FDS, 2022 WL 279638 (D. Mass. Jan. 31, 2022), for the proposition that in situations similar to Petitioner, "courts have agreed that a year or more is not an unreasonable period." (ECF No. 25 at 4–5.) Although in balancing

multiple factors[7] the district court may have found that the mandatory detention had not been unreasonably prolonged in Dos Santos and Alphonse, the district court nevertheless acknowledged that detention "exceed[ing] one year . . . is . . . presumptively unreasonable," but that "alone is not dispositive." Alphonse, 2022 WL 279638, at *9.

At the hearing, Respondents argued that length of detention must be viewed in the context of the procedural posture of the immigration case and that regardless of the length of detention, detention remains constitutional if there is no unreasonable delay by the government and the government has moved at a reasonable pace towards securing its interest in obtaining a valid removal order. The Court is not persuaded by Respondents' argument. In upholding the constitutionality of mandatory detention under 8 U.S.C. § 1226(c), Demore relied on the "brief" and "very limited time of the detention," repeatedly referring to the brevity of § 1226(c) detention throughout the opinion and observing that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked," which is "less than the 90 days we considered presumptively valid in Zadvydas," and "about five months in the minority of cases in which the alien chooses to appeal." Demore, 538 U.S. at 513, 529 & n.12, 530. See Muse v. Sessions, 409 F. Supp. 3d 707, 714–15 (D. Minn. 2018) (rejecting the government's contention "that the Due Process Clause permits detention of an alien for the entire duration of removal proceedings so long as the government acts in good faith and does not engage in dilatory conduct"); Martinez, 2019 WL 5968089, at *8 (declining to adopt the government's argument "that regardless of the length of detention without a bond hearing, detention remains constitutional so long as there is no unreasonable delay by the Government") (collecting cases).

"In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'" Gonzalez, 2019 WL 330906, at *3

---

[7] "[T]o determine when mandatory detention becomes unreasonably prolonged, the following nonexclusive factors should be considered: the total length of the detention; the foreseeability of proceedings concluding in the near future (or the likely duration of future detention); the period of the detention compared to the criminal sentence; the promptness (or delay) of the immigration authorities or the detainee; and the likelihood that the proceedings will culminate in a final removal order." Alphonse, 2022 WL 279638, at *8 (quoting Reid v. Donelan, 390 F. Supp. 3d 201, 219 (D. Mass. 2019)). Accord Dos Santos, 2021 WL 3361882, at *1.

1  (alteration in original) (quoting Muse, 409 F. Supp. 3d at 716). Here, Petitioner has been
2  detained for one year. Accordingly, the Court finds that the total length of detention factor
3  weighs in favor of Petitioner.

        2.   Likely Duration of Future Detention

Respondents contend that the "court should not rely on predictions regarding future events to determine whether present detention is unconstitutional" because future events with so many intervening factors are difficult to predict and a future event cannot make present detention unconstitutional. Respondents argue that "[i]f the government has moved at a reasonable pace and has been successful in vindicating its interest in detention by securing a removal order, that provides strong evidence that section 1226(c) remains constitutional." (ECF No. 25 at 5.)

The Court does not find Respondents' argument persuasive for the reasons set forth in section II(C)(1), *supra*. This Court "concludes, as have nearly all the other courts to consider this issue, that the starting point of the analysis is the length of detention—both how long the petitioner has been detained and *how long the detention is likely to last*." Gonzalez, 2019 WL 330906, at *5 (emphasis added) (collecting cases). See German Santos, 965 F.3d at 211 ("[W]e consider whether the detention is likely to continue. When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." (citations omitted)).

Here, Petitioner has two appeals pending before the Board of Immigration Appeals ("BIA"). In one appeal, Petitioner's briefing deadline was September 1, 2022, and the government has an opportunity to respond. Petitioner's other appeal regarding a motion to reconsider has not been assigned a briefing schedule yet. Additionally, Petitioner indicates that if his administrative appeals are dismissed, he intends to seek judicial review with the Ninth Circuit. (ECF No. 24 at 8.)

Although the Court recognizes, as argued by Respondents, that future events are difficult to predict, the Court nevertheless finds that Petitioner's administrative appeals and possible judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner. See German Santos, 965 F.3d at 212 (finding that appeal of cancellation of

removal order with the BIA "could take months" and potential review in the Third Circuit "would add months more in prison" such that "the likelihood that [petitioner's] detention will continue strongly supports a finding of unreasonableness"); Banda, 385 F. Supp. 3d at 1119 (finding that appeal of removal order with the BIA and review in the Ninth Circuit may take up to two years or longer and favors granting petitioner a bond hearing).

        3.    <u>Delays in Removal Proceedings Caused by Petitioner and Government</u>

In immigration court, Petitioner requested multiple continuances to allow adjudication of a Form I-130 before moving forward with his immigration case. However, Petitioner argues that he is not solely responsible for the delay because he was waiting for the U.S. Citizenship and Immigration Services ("USCIS") to process the Form I-130. (ECF No. 21 at 4–5; ECF No. 24 at 10–11.) Respondents note that Petitioner's delays accounted for approximately four months of Petitioner's detention and argue that "Petitioner should not be permitted to continue himself into bond-eligibility." (ECF No. 25 at 8.)

"Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." Liban M.J. v. Sec'y of Dep't of Homeland Sec., 367 F. Supp. 3d 959, 965 (D. Minn. 2019) (citing Hernandez v. Decker, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("the mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition")). See Gonzalez, 2019 WL 330906, at *4 (The government cites no authority for the proposition that a petitioner who pursues his available legal remedies must forego any challenge to the reasonableness of his detention in the interim and the Court is unaware of any.").

"[T]he fact that Petitioner chose to pursue the Form I-130 and requested continuances to further that application does not deprive him of a constitutional right to due process." Henriquez, 2022 WL 2132919, at *5. Although Petitioner requested multiple continues to allow adjudication of the Form I-130, the Court also recognizes that part of the delay is attributable to the time it takes USCIS to process the Form I-130. See Sajous, 2018 WL 2357266, at *11 ("[T]he operative

1 question should be whether the alien has been the cause of delayed immigration proceedings and,
2 where the fault is attributable to some entity other than the alien, the factor will weigh in favor of
3 concluding that continued detention without a bond hearing is unreasonable."). Accordingly, the
4 Court finds that the delay factor is neutral.

      4. Conclusion

The Court appreciates that the government has a strong interest in enforcing immigration laws, ensuring the presence of noncitizens at their removal proceedings, and protecting the public from danger. However, the "government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him *without a bond hearing*." Zagal-Alcaraz, 2020 WL 1862254, at *7 (emphasis added). See Henriquez, 2022 WL 2132919, at *5 ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). On the other hand, it "is beyond dispute" that Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Both the length of detention to date, "which is the most important factor," Banda, 385 F. Supp. 3d at 1118,[8] and the likely duration of future detention weigh in favor of finding continued detention unreasonable. The delay factor is neutral. Accordingly, the Court finds that Petitioner's continued detention has become unreasonable and due process requires that Petitioner be provided a bond hearing.

**D. Remedy**

In the petition, Petitioner requests an order securing his immediate release, or in the alternative, a bond "hearing before an immigration judge where . . . to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger[.]" (ECF No. 1 at 21.) Petitioner provides no authority to support his claim that

---

[8] Accord German Santos, 965 F.3d at 211 ("The most important factor is the duration of detention.")

15

he is entitled to an order of release. When asked by the Court at oral argument, Petitioner acknowledged that release was not the appropriate remedy. The Court finds, consistent with other post-Jennings cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release.[9] See, e.g., Mitka, 2019 WL 5892025, at *4 (denying request for immediate release but ordering bond hearing); Martinez, 2019 WL 5968089, at *11 (same); Yagao v. Figueroa, No. 17-CV-2224-AJB-MDD, 2019 WL 1429582, at *4 (S.D. Cal. Mar. 29, 2019) (same).

### E. Eighth Amendment

Petitioner also asserts that his detention violates the Eighth Amendment. (ECF No. 1 at 20.) Courts have consistently recognized that the removal process is a civil proceeding and not criminal punishment. See INS v. Lopez–Mendoza, 468 U.S. 1032, 1039 (1984) ("A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry...."); Agyeman v. INS, 296 F.3d 871, 886 (9th Cir. 2002) ("It is well established that deportation proceedings are civil, rather than criminal, in nature."). Like other courts that have addressed this issue, the Court finds Petitioner is "not entitled to habeas relief on

---

[9] The parties dispute who bears the burden of proof at the bond hearing. (ECF No. 19 at 10; ECF No. 21 at 15.) Citing Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), Petitioner argues that "[t]o justify prolonged immigration detention, the government must bear the burden of proof by clear and convincing evidence that the noncitizen is a danger or flight risk." (ECF No. 21 at 15.) Respondents contend that the "burden at any bond hearing is properly placed on Petitioner" because "the reasoning of Singh is 'clearly irreconcilable' with *Jennings*" and thus, "this Court is bound by Jennings, not Singh." (ECF No. 19 at 11.)

The Court finds Martinez v. Clark, 36 F.4th 1219 (9th Cir. 2022), which was decided after Jennings, to be instructive. In Martinez, the district court ordered that Martinez, who was detained under § 1226(c) like Petitioner, receive a bond hearing. A hearing was held, an immigration judge found that clear and convincing evidence showed that Martinez was a danger to the community, the Board of Immigration Appeals affirmed, and Martinez sought federal court review. Although the Ninth Circuit took "no position" on "[w]hether due process requires a bond hearing for aliens detained under § 1226(c)," it did address "the scope of federal court review of those bond determinations." Id. Martinez asserted, inter alia, that the BIA applied the incorrect burden of proof at his bond hearing, but the Ninth Circuit found that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community." Martinez, 36 F.4th at 1231. Accordingly, the Court finds that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond" and that the bond hearing must comport with the other requirements of Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). See, e.g., Juarez, 2021 WL 2323436, at *8 (requiring bond hearing to comport with requirements of Singh); Banda, 385 F. Supp. 3d at 1120–21 (same); Djelassi, 434 F. Supp. 3d at 923–24 (same); Martinez, 2019 WL 5968089, at *11 (same and collecting cases). See also German Santos, 965 F.3d at 214 (holding that in order to justify a noncitizen's continued detention under § 1226(c) "the Government bears the burden of persuasion by clear and convincing evidence. That evidence must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community").

the ground that his immigration detention violates the Eighth Amendment's prohibition against cruel and unusual punishment." Gonzalez, 2019 WL 330906, at *6 (citing Slim v. Nielson, No. 18-cv-02816-DMR, 2018 WL 4110551, at *7 (N.D. Cal. Aug. 29, 2018), and Calmo v. Sessions, No. C 17-07124 WHA, 2018 WL 2938628, at *5 (N.D. Cal. June 12, 2018)). Cf. Martinez, 2019 WL 5968089, at *11 ("Because § 1226(c) mandates detention for reasons other than prevention of flight, petitioner's detention does not violate the Excessive Bail Clause." (citing United States v. Salerno, 481 U.S. 739, 752 (1987); Marogi v. Jenifer, 126 F. Supp. 2d 1056, 1062 (E.D. Mich. 2000) (rejecting Excessive Bail Clause challenge by a noncitizen detained under § 1226(c)); Avramenkov v. INS, 99 F. Supp. 2d 210, 218 (D. Conn. 2000) (same); Alexis v. Sessions, No. 18-1923, 2018 WL 5921017, at *9 (S.D. Tex. Nov. 13, 2018) (same))).

### F. Attorney's Fees

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (ECF No. 1 at 21.) The EAJA provides in pertinent part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
>
> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412 (d)(1)(A)–(B).

The Court will consider an application from Petitioner requesting (and substantiating) reasonable fees and costs under the EAJA that is filed within thirty days of the judgment.

# III.
# ORDER

Based on the foregoing, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus (ECF No. 1) is GRANTED IN PART and DENIED IN PART. The petition is GRANTED as to Petitioner's due process claim and request for a bond hearing. The petition is DENIED in all other respects.
2. Within **thirty (30) days** of the date of service of this order, Respondents shall provide Petitioner with an individualized bond hearing before an immigration judge.
3. Petitioner's motion for temporary restraining order (ECF No. 2) is DENIED AS MOOT.
4. Respondents' motion to dismiss (ECF No. 19) is DENIED.

IT IS SO ORDERED.

Dated: **September 28, 2022**

UNITED STATES MAGISTRATE JUDGE